UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOHN YANG LEE,

              Plaintiff,

v.                                        **DECISION AND ORDER**
                                                  10-CV-103S

ALAN R. SALTZMAN, ELLEN P. RICH,
and STATE UNIVERSITY OF NEW YORK
AT BUFFALO,

              Defendants.

      1.      On February 28, 2011 *pro se* plaintiff John Yang Lee filed an Amended Complaint in the Western District of New York claiming violations by Defendants Alan R. Saltzman, Ellen P. Rich, and the State University of New York at Buffalo ("SUNY") of 42 U.S.C § 1981, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2000e-17, the New York State Human Rights Law ("NYHRL"), N.Y. Exec. Law § 290-296 *et seq.*, as well as state law claims for breach of contract and tortious interference. Plaintiff alleges that Defendants racially discriminated against him throughout his first year residency course and continue to deny him first year credits necessary for issuance of a medical license. Presently before this Court is Defendants' Motion to Dismiss. For the following reasons, Defendants' motion is granted.

      2.      On February 8, 2011, Plaintiff filed his original Complaint against Defendants Saltzman and Rich. (Docket No. 1.) At that time, Defendants moved to dismiss Plaintiff's Complaint. (Docket No. 4.) Plaintiff filed a motion to amend his Complaint and add SUNY as a defendant. (Docket No. 11.) Plaintiff's motion was granted, and this Court denied as moot Defendants' first Motion to Dismiss. Plaintiff filed an Amended Complaint on

February 28, 2011. (Docket No. 15.) Defendants, now joined by SUNY, again move to dismiss. (Docket No. 16.) Along with their motion, Defendants filed a Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Amended Complaint. (Docket No. 17.) Plaintiff filed a Response (Docket No. 19) on April 4, 2011, and Defendants filed a Reply Memorandum (Docket No. 20) on April 11, 2011. Plaintiff filed his own second Response Memorandum on July 5, 2011. (Docket No. 21.)

3.	For purposes of adjudicating the present motion, this Court assumes the truth of the following factual allegations contained in Plaintiff's Complaint. See Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll., 128 F.3d 59, 63 (2d Cir. 1997). In approximately 2004, Plaintiff was offered a 3-year residency position with SUNY's internal medicine residency program. (Complaint ("Comp."), Docket No. 1, ¶ 7.) Plaintiff's performance was found satisfactory for the first three months of the program. (Id. ¶ 8.) Plaintiff then learned that Defendant Saltzman, the chairman of SUNY's department of medicine, had claimed to dislike Chinese persons. (Id. ¶ 9.) Saltzman was also part of a two-week-rotation which included Plaintiff, and Plaintiff was the only member in the residency program of Chinese origin. (Id.) Defendants' conduct following this initial incident may be summarized as follows. Between January 3, 2005 and January 16, 2005 Saltzman remarked that Plaintiff was in the wrong field because of his accent and that his Chinese medical education was inferior to that of even a third year medical student. (Id.) On January 10, 2005 Saltzman sent a letter, of which Plaintiff came aware only in September 2007, to Defendant Rich, the residency program director, asking him to terminate Plaintiff's residency. (Id. ¶ 10.) On January 24, 2005, Rich put Plaintiff on probation. (Id. ¶ 11.) Saltzman then canceled Plaintiff's mid-term evaluation by the Intern & Residency Evaluation

Committee and began to manipulate Plaintiff's evaluation forms. (Id. ¶ 14.) On March 14, 2005 Rich informed Plaintiff that his contract would not be renewed and that he would need to find a second year position elsewhere. (Id. ¶ 16.) However, Defendants did not release Plaintiff's first year credits, preventing Plaintiff from securing a second year position. (Id. ¶ 17.) Plaintiff accused Saltzman of influencing his evaluations and, in response, Defendants compelled one of Plaintiff's supervisors to fabricate a bad record that would assist Defendants in immediately terminating Plaintiff. (Id. ¶ 19.) Plaintiff sought an appeal, but was denied on June 13, 2005. (Id. ¶ 20.) Eventually, Defendants did terminate Plaintiff, awarding him only 10.5 credits, instead of the usual 12 because of an unsatisfactory rotation during his first year of residency. (Id. ¶ 21.) On June 19, 2005 Plaintiff requested, and was denied, a training extension and was also denied transfer to an alternative specialty. (Id. ¶¶ 22, 23.) Defendants also refused Plaintiff's later request in July 2005 that the program allow him to make up the last two months of residency. (Id. ¶ 24.) Plaintiff was also denied the right to a special appeal. (Id. ¶ 26.)

Plaintiff continued speaking out against Defendants. In April 2006 he reported the alleged discrimination to the Director of Graduate Medical Education, Associate Dean Roseanne C. Berger. (Id.) Plaintiff was then permitted to complete a standardized patient exercise. (Id. ¶ 28.) But, despite performing well, Defendants continued to reject his requests to return to the residency program. (Id.) Most recently, on February 5, 2009, the Committee on the Professions of New York determined that Plaintiff had satisfied his pre-professional education requirements for licensure. (Comp. ¶ 32.) However, Defendant Rich denied Plaintiff credit for his residency, preventing issuance of the Plaintiff's New York Medical license. (Id.)

4. In July 2006, Plaintiff reported Defendants' actions to the Equal Employment Opportunity Commission ("EEOC"). The EEOC found that his claims were time-barred. (Id. ¶ 29.) A similar result followed when Plaintiff reported his case to the state human rights department. (Id.) Plaintiff unsuccessfully sought redress by securing legal representation between June 2007 and October 2009. (Id. ¶¶ 30, 31.) Ultimately, Plaintiff proceeded *pro se* and, in October 2010, submitted a new complaint to the EEOC. (Id. ¶ 33.). On June 24, 2011 the EEOC sent Plaintiff a Dismissal and Notice of Rights, finding that it was unable to conclude that any statutes had been violated. (Plaintiff's Response to Defendants' Reply Memorandum of Law, Docket No. 21, Dismissal and Notice of Rights.)

5. Rule 12(b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12 (b)(6). Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of the claim. Fed. R. Civ. P. 8(a)(2). But the plain statement must "possess enough heft to show that the pleader is entitled to relief." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007). When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007); Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008). Legal conclusions, however, are not afforded the same presumption of truthfulness. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id.

at 1945 (quoting Twombly, 550 U.S. at 570).  Labels, conclusions, or "a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.  Facial plausibility is present when the factual content of the complaint allows for a reasonable inference that the defendant is liable for the misconduct alleged.  Iqbal, 129 S. Ct. at 1949.  The plausibility standard is not, however, a probability requirement; the pleading must show, not merely allege, that the pleader is entitled to relief.  Id. at 1950; Fed. R. Civ. P. 8(a)(2).  Well-pleaded allegations in the complaint must nudge the claim "across the line from conceivable to plausible."  Twombly, 550 U.S. at 570.  Furthermore, this Court is aware of the distinct disadvantage at which *pro se* litigants are placed, and recognizes that federal courts routinely read submissions by *pro se* litigants liberally, interpreting them to raise the strongest arguments they suggest.  See Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596, 30 L. Ed. 2d 652 (1972); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).

6. Plaintiff brings claims under 42 U.S.C § 1981, Title VII, the NYHRL, and state law.  At the outset, this Court notes that the majority of these claims are barred by the Eleventh Amendment.  It is well settled that the Eleventh Amendment bars suits against states and state agencies.  See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100-02, 104 S. Ct. 900, 908-09, 79 L. Ed. 2d 67 (1984); Jones v. New York State Div. of Military & Naval Affairs, 166 F.3d 45, 49 (2d Cir. 1999).  This Court is barred from "exercising jurisdiction over lawsuits against a state unless [the state] waive[s] sovereign immunity or Congress has expressly and validly abrogated that immunity."  A.A. v. Bd. of Educ., Central Islip Union Free Sch. Dist., 196 F. Supp. 2d 259, 264 (E.D.N.Y. 2002) (citing Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 363, 121 S. Ct. 955, 148 L. Ed. 2d 866

(2001)). Furthermore, the Eleventh Amendment's protection extends to state officials being sued in their official capacities. Papasan v. Allain, 478 U.S. 265, 277, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] [a]s such, it is no different from a suit against the State itself." Harris v. Queens County Dist. Attorney's Office, No. 08-CV-1703 (CBA)(LB), 2009 WL 3805457, at *4 (E.D.N.Y. Nov. 2009) (quoting Will v. Michigan Dep't of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989)).

7. SUNY, for purposes of the Eleventh Amendment, is an integral part of the state government such that when it is sued, the State of New York is the real party. Dube v. State Univ. of N.Y., 900 F.2d 587, 594 (2d Cir. 1990). "SUNY has clearly not consented to suit in a federal forum." Id. Similarly, Defendants Saltzman and Rich are identified, respectively, as chairman of the department of medicine and residency program director, and are thus clearly state agency officials. See Whaley v. City Univ. of N.Y., 555 F. Supp. 2d 381, 400-01 (S.D.N.Y. 2008) ("State employment has generally been deemed sufficient to render the defendant a state actor." (internal quotation marks omitted)). Plaintiff is bringing suit against the individual Defendants because of decisions they made in their official capacities. All the allegations relating to Defendants' interference relate to their denial of Plaintiff's first semester residency credits. This is a decision within the scope of their official capacities. Accordingly, the Eleventh Amendment will constitute a bar to several of Plaintiff's claims against both SUNY and Defendants Saltzman and Rich.

8. Among the claims barred by the Eleventh Amendment are those claims Plaintiff brings under 42 U.S.C. § 1981 seeking to recover money damages for damage

done to his career and mental health. "Congress has not abrogated the states' sovereign immunity under 42 U.S.C. § 1981." Moshenko v. State Univ. of N.Y. at Buffalo, No. 07-CV-0116(A)(M), 2009 WL 5873236, at *4 (W.D.N.Y. Sep. 16, 2009) (quoting Smith v. State Univ. of N.Y., No. 1:00-CV1454(FJS/RFT), 2003 WL 1937208, at *7 (N.D.N.Y. Apr. 23, 2003)). "Because the state has not waived its Eleventh Amendment immunity to claims brought under § 1981 . . . these claims will be dismissed and the Court need not reach their merits." Concey v. New York State Unified Ct. Sys., No. 08 Civ. 8858(PGG), 2011 WL 4549386, at *7 (S.D.N.Y. Sep. 30, 2011) (quoting Koumantaros v. City Univ. of N.Y., No. 03 Civ. 10170(GEL), 2007 WL 840115, at *4 (S.D.N.Y. Mar. 19, 2007)); see also Bogle-Assegai v. Connecticut, 470 F.3d 498, 509 (2d Cir. 2006) (affirming dismissal of § 1981 claims against state and individual defendants in their official capacities on Eleventh Amendment immunity grounds).  Accordingly, Plaintiff's § 1981 claims against all Defendants are barred by the Eleventh Amendment. See Amna v. New York State Dep't of Health, No. 08-CV-2806 (CBA)(LB), 2011 WL 4592787, at *16 (E.D.N.Y. Sep. 30, 2011) (dismissing § 1981 claims on Eleventh Amendment grounds).

9.  The same result follows for Plaintiff's state law claims. Plaintiff brings discrimination and retaliation claims under the NYHRL. Plaintiff also brings breach of contract and tortious interference claims under state law. Because SUNY has not consented to suit, these claims must also be dismissed. Moshenko, 2009 WL 5873236, at *4 (noting that district courts in the Second Circuit have repeatedly held that NYHRL does not include waiver of state sovereign immunity in federal court); Heba v. New York State Div. of Parole, 537 F. Supp. 2d 457, 471 (E.D.N.Y. 2007) (holding that Eleventh Amendment bars suit against state agency under NYHRL and state law claims).

10. Beside money damages, Plaintiff also seeks injunctive relief. An exception to Eleventh Amendment immunity exists where a Plaintiff brings suit seeking prospective injunctive relief. However, as against a state agency like SUNY, the Eleventh Amendment is a bar regardless of "whether relief sought is legal or equitable," Kulkarni v. City Univ. of N.Y., No. 01 CIV. 3019(DLC), 2001 WL 1415200, at *5 (S.D.N.Y. Nov. 13, 2001). (quoting Dube v. State Univ. of N.Y., 900 F.2d 587, 594 *2d Cir. 199)). Similarly, state law cannot provide a basis for injunctive relief. Schwartz v. York College, No. 06-CV-6754 (RRM)(LB), 2009 WL 3259379, at *3 (E.D.N.Y. Mar. 31, 2009) (denying injunctive relief for violations of NYHRL). The exception only applies where a plaintiff brings claims for prospective injunctive relief against state officials based on continuing violations of federal law. Id. (citing Edelman v. Jordan, 415 U.S. 651, 677, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974)). In determining whether the exception "avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" Jude v. New York State, No. 07 Civ. 5890(RJS), 2009 WL 928134, at *4 (S.D.N.Y. Mar. 30, 2009) (quoting Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645, 122 S. Ct. 1753, 152 L. Ed. 2d 871 (2002)) (alterations in original).

11. Here, Plaintiff seeks a court order that Defendants provide Plaintiff his first year credits, transfer him to another residency program, or provide further residency training in the program. Plaintiff contends that Defendants are required to provide him his first year credits and are continuing not to provide them. Thus, Plaintiff has pleaded an ongoing violation of federal law. Similarly, Plaintiff seeks prospective injunctive relief. Plaintiff asks this Court to order Defendants to stop withholding the credits he alleges to

have rightfully earned. Alternatively, Plaintiff asks Defendants to provide him with additional training. Accordingly, this Court finds that Plaintiff's § 1981 claim for prospective injunctive relief against Defendants Saltzman and Rich would not be barred by the Eleventh Amendment.

12.     Nevertheless, although the Eleventh Amendment does not bar Plaintiff's claims for injunctive relief, they are still barred by the statute of limitations. The statute of limitations under § 1981 is either three or four years, depending on whether the claims fall under the 1991 amendment to § 1981 or under its original construction. See Ray v. Klyczek, No. 08-CV-488S, 2009 WL 3199606, at *2 (discussing catchall four-year statute of limitations for actions arising under federal statutes enacted after December 1, 1990). "Under federal law, a cause of action accrues 'when the plaintiff knows or has reason to know of the injury which is the basis of his action." Nadolecki v. New York State Dep't of Taxation & Fin., No. CV 09-3888(SJF)(ETB), 2011 WL 2446491, at *10 (E.D.N.Y. May 17, 2011) (quoting Peal v. City of Long Beach, 296 F.3d 76, 80 (2d Cir. 2002)). When considering whether a claim is timely, courts look to the time of the discriminatory act, not the point at which the consequences of the act become painful. Id. (quoting Morse v. Univ. of Vt., 973 F.2d 122, 125 (2d Cir. 1992)). Here, Plaintiff knew as early as the middle of 2005 that Defendants would not award Plaintiff all his residency credits for the first year. It is also undisputed that Plaintiff required a 12-month certificate of residency to receive his medical license. Although Plaintiff was actually denied his medical license in 2009, it was clear that Defendants would not release Plaintiff's residency credits over four years earlier. Accordingly, because Plaintiff's claims accrued in 2005 they are time-barred.

13.     Plaintiff's reliance on the continuing violation doctrine is misplaced. "Under

9

the continuing violation doctrine, if a plaintiff has experienced a continuous practice and policy of discrimination, . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." Nadolecki, 2011 WL 2446491, at *11 (quoting Fitzgerald v. Henderson, 251 F.3d 345, 359 (2d Cir. 2001)) (quotation marks omitted).  The continuing violation doctrine is disfavored in this Circuit.  See Samimy v. Cornell Univ., 961 F. Supp. 489, 493 (W.D.N.Y. 1997) (citing cases).  Only compelling circumstances will warrant application of the continuing violation exception to the statute of limitations.  Blesedell v. Mobil Oil Co., 708 F. Supp. 1408, 1415 (S.D.N.Y. 1989) (citing LaBeach v. Nestle Co., 658 F. Supp. 676, 687 (S.D.N.Y. 1987)).  "[M]ultiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." Lambert v. Genesee Hosp., 10 F.3d 46, 53 (2d Cir. 1993) (citations omitted), *abrogated on other grounds by* Kasten v. Saint-Gobain Performance Plastics Corp., 131 S. Ct. 1325 (2011).  Here, Plaintiff has not alleged the kind of discriminatory policies or mechanisms such as discriminatory seniority lists or employment tests that could qualify under the continuing violation exception.  See id. Furthermore, the alleged acts in 2009 were merely a consequence of the decision Defendants made in 2005 to deny Plaintiff his residency credits for the full twelve months. Accordingly, the continuing violation doctrine is not applicable.

   14. The Complaint also alleges violations of Title VII.  Like Plaintiff's claims for injunctive relief, Plaintiff's Title VII claims are not barred by the Eleventh Amendment. Nadolecki, 2011 WL 2446491, at *5 ("Congress ha[s] expressed a clear intent to abrogate the states' Eleventh Amendment immunity under Title VII . . . ." (citing Fitzpatrick v. Bitzer, 427 U.S. 445, 96 S. Ct. 2666, 49 L. Ed. 2d 614 (1976))); see also Concey, 2011 WL

4549386, at *14 (Title VII claims against New York State Unified Court System, Office of Court Administration not barred on Eleventh Amendment grounds). However, individuals may not be held liable under Title VII. See Tomka v. Seiler Corp., 66 F.3d 1295, 1313-16 (2d Cir. 1995), *abrogated on other grounds by* Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998). As a result, Plaintiff's Title VII claims against Defendants Saltzman and Rich will be dismissed.

   15. Plaintiff's remaining Title VII discrimination and retaliation claims against SUNY are all time-barred. Before this Court can hear a Title VII claim, Plaintiff must first file a timely charge with the EEOC or equivalent state agency. Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 712 (2d Cir. 1996); Cornwell v. Robinson, 23 F.3d 694, 706 (2d Cir. 1994). In New York, where state and local agencies have authority to grant relief from unlawful employment practices, a discrimination claim must be filed with the state or local agency within 300 days after the alleged unlawful conduct. Forsyth v. Fed'n Emp't & Guidance Serv., 409 F.3d 565, 572 (2d Cir. 2005) (citing 42 U.S.C. § 2000e-5(e)(1)), *abrogated on other grounds by* Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618, 127 S. Ct. 2162, 167 L. Ed. 2d 982 (2007). Here, Plaintiff's Complaint reveals that he filed a claim with the EEOC in July 2006. The EEOC found that Plaintiff's claims were untimely. (Comp. ¶ 29.) Although the Court notes that Plaintiff's Complaint alleges discriminatory action in April 2006, shortly before his EEOC filing, this is ultimately unavailing. A plaintiff bringing a Title VII action who has filed a timely charge with the EEOC must still file suit within 90 days of receipt of his right-to-sue letter. Van Zant, 80 F.3d at 712. Here, it is undisputed that Plaintiff did not file his Complaint within that 90 day period. Accordingly, Plaintiff's claims arising out of conduct occurring in 2005 and 2006 are time-barred.

16. Additionally, Plaintiff's claim for conduct occurring in August 2009 is also time-barred. Plaintiff claims that in August 2009, "Defendant Rich changed official letter denying any month credit resulting in no license could be issued for the plaintiff from the New York Medical License Unit" and also that "plaintiff's application for the physician scientist was rejected because of the said letter." (Comp. ¶ 32.) As already discussed, a plaintiff must first exhaust his administrative remedies by presenting his claims to the EEOC. Bailey v. Colgate-Palmolive Co., No. 99 Civ. 3228, 2003 WL 21108325, at *12 (S.D.N.Y. May 14, 2003). "[E]xhaustion of administrative remedies through the EEOC stands as an essential element of Title VII's statutory scheme, and one with which defendants are entitled to insist that plaintiffs comply." Boata v. Pfizer, Inc., No. 10 Civ. 4390(DLC), 2010 WL 4878872, at *4 (S.D.N.Y. Dec. 1, 2010) (quoting Francies v. City of New York, 235 F.3d 763, 768 (2d Cir. 2000)). Here, Plaintiff did not file a claim with the EEOC until October 2010 concerning conduct alleged to have occurred in August 2009. This takes it far outside the time period in which Plaintiff was required to file his charge with the EEOC. See Parks v. New York City Dep't of Corr., 253 Fed. Appx. 141, 143 (2d Cir. 2007) (noting that New York plaintiffs have 180 days from date of alleged unlawful employment practice to file complaint with EEOC where no proceedings instituted with relevant state or local agency). Accordingly, this claim must also be dismissed.

17. The Court notes that on July 5, 2011, Plaintiff filed a response to Defendant's Reply Memorandum. In its March 16, 2011 scheduling notice, this Court directed that any response to Defendant's motion be made by March 31, 2011 and that Defendant's reply be filed by April 11, 2011. Plaintiff did not move, and this Court did not grant, leave to file a supplemental submission. Nevertheless, in deference to Plaintiff's status as a *pro se*

litigant, this Court will consider Plaintiff's submission. Plaintiff's second response largely reiterates facts stated in his Complaint, as well as further arguing that this matter falls within the continuing violation doctrine, an argument this Court has already rejected. In that response, Plaintiff also states that he received a Dismissal and Notice of Rights from the EEOC on June 29, 2011, after Defendants had already filed their Reply. This confirms that, at the time Plaintiff filed his original Complaint on February 8, 2010, and his Amended Complaint on February 28, 2011, Plaintiff had not yet exhausted his administrative remedies. Adams v. New York State Educ. Dep't, 752 F. Supp. 2d 420, 470 (S.D.N.Y. 2010) ("A plaintiff cannot bring a Title VII claim in federal court until he has obtained a right to sue letter from the EEOC."). Moreover, based on the facts alleged in the Complaint, and as discussed above, Plaintiff's EEOC filing was untimely. Nothing in Plaintiff's second response compels a contrary result. Accordingly, Defendants' Motion to Dismiss will be granted as to Plaintiff's Title VII claims.

IT HEREBY IS ORDERED, that Defendants' Motion to Dismiss (Docket No. 16) is GRANTED.

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.

Dated:   November 18, 2011
         Buffalo, New York

                                             /s/William M. Skretny
                                            WILLIAM M. SKRETNY
                                                 Chief Judge
                                           United States District Court